**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
ALEXIS M. WOOD (SBN 270200)
*alexis@consumersadvocates.com*
KAS L. GALLUCCI (SBN 288709)
*kas@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| JABRIL BATTLE JR., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TAYLOR JAMES, LLC, dba SUPERGOOP!<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Jabril Battle Jr., on behalf of himself and all others similarly situated, by and through his undersigned counsel, hereby sues Taylor James, LLC dba Supergoop! ("Defendant") and, upon information and belief and investigation of counsel, alleges as follows:

## I.      JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), because at least one member of the class, as defined below is a citizen of a different state than Defendant, there are more than 1,000 members of the class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

2.      The Court has personal jurisdiction over Defendant because Defendant transacts and does business within this judicial district and is committing the acts complained of below within this judicial district.  As a result, Defendant is subject to the jurisdiction of this Court pursuant to the laws of this State and Rule 4 of the Federal Rules of Civil Procedure.

3.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the injury in this case substantially occurred in this District.

## II.      PARTIES

4.      Plaintiff Jabril Battle Jr. ("Battle" or "Plaintiff") is a resident of Los Angeles, California.

5.      Defendant is a Texas limited liability company with its principal place of business at 200 East Grayson Street, Suite 112, San Antonio, Texas 89215.

## III.      FACTUAL ALLEGATIONS

6.      Plaintiff brings this consumer protection and false advertising class action lawsuit against Defendant regarding its misleading business practices with respect to the labeling, marketing, and sale of its Supergoop! "Reef-Safe" branded chemical sunscreens.

7.      Defendant has marketed and sold the chemical sunscreens with labeling

CLASS ACTION COMPLAINT

and advertising that leads consumers to believe that the sunscreens are "Reef-Safe." However, the chemical sunscreens contain active ingredients that are known to damage coral reefs and other marine life.  In fact, following the 2018 bill passed by the Hawai'i Senate banning oxybenzone and octinoxate sunscreens, Hawai'i has passed a bill banning the two additional harmful petrochemicals, avobenzone and octocrylene, which are toxic to human health, coral reefs and marine species.  *See* Hawai'i Senate Bill Bans Harmful Sunscreen Chemicals - Center for Biological Diversity available at https://biologicaldiversity.org/w/news/press-releases/hawaii-senate-bill-bans-harmful-sunscreen-chemicals-2021-03-09/ (last visited October 4, 2021).  Octocrylene has also been banned in sunscreen products sold in the U.S. Virgin Islands, in Key West, Florida, and the Republic of the Marshall Islands.

8.     Research demonstrates that octocrylene can disrupt human hormones and have toxic impacts on a variety of aquatic organisms, including corals, fish and marine mammals.  Avobenzone is also an endocrine disruptor and can reduce coral resilience against the high ocean temperatures that are killing corals worldwide.  *See id.*

9.     Defendant's chemical sunscreens are sold and advertised as "Reef-Safe," yet contain both octocrylene and avobenzone.  Thus, the sunscreens are being falsely advertised to consumers who are purchasing these sunscreens at a premium with reliance on Defendant's false and deceptive language.

10.    Defendant promotes itself as "Experts in SPF" who "continually invest in newer, better ways to bring sunscreen to life."  *See* About Us - Supergoop! available at https://supergoop.com/pages/about-us (last visited October 4, 2021). Defendant boasts that it is "doing things better" stating its products are "reef-safe, cruelty-free and made with clean ingredients." *Id*. In fact, Defendant makes the claim that "**every product is reef-safe**." *Id*. (emphasis added).  The image below is a depiction from Defendant's website which identifies all its products and being "Reef

1  Safe."










11.     Furthermore, Defendant's blog "thebrightside" includes an article entitled "Everything You Should Know About Reef-Safe Sunscreen" where it discusses "reef-safe" and promotes its product Everyday Sunscreen SPF 30 as a "clean chemical, reef-safe SPF" despite the product including avobenzone as an active ingredient.    *See* https://thebrightside.supergoop.com/what-is-reef-safe-sunscreen/ (last visited October 4, 2021).

12.     By advertising "reef-safe" and "cruelty-free," yet using active chemical ingredients that are known to cause reef and marine damage, Defendant is deceiving their customers who are relying on their representations.

13.     Defendant's annual sales in 2018 alone exceeded $40 million, thus it is apparent Defendant is making a profit from consumers who are attempting to be

CLASS ACTION COMPLAINT

ecologically conscious and paying a higher price for a product in order to accomplish this goal.

14.     The chemical sunscreens at issue (herein after referred to as "the Products") which bear labeling and advertising stating "Reef Safe," yet contain octocrylene and/or avobenzone are as follows:

- Unseen Sunscreen SPF 40 (1.7 oz. sells for $34.00 on Defendant's website);
- Unseen Sunscreen SPF 40 (.68 oz. sells for $20.00 on Defendant's website);
- Glow Screen SPF 40 (1.7 oz. sells for $36.00 on Defendant's website);
- PLAY Everyday Lotion SPF 50 with Sunflower Extract (18 oz. sells for $58.00 on Defendant's website);
- PLAY Everyday Lotion SPF 50 with Sunflower Extract (5.5 oz. sells for $32.00 on Defendant's website);
- PLAY Everyday Lotion SPF 50 with Sunflower Extract (2.4 oz. sells for $22 on Defendant's website);
- Daily Dose Vitamin C + SPF 40 Serum (sells for $46.00 on Defendant's website);
- Glow Stick SPF 50 (sells for $25.00 on Defendant's website);
- Superscreen Daily Moisturizer SPF 40 (sells for $38.00 on Defendant's website);
- PLAY Antioxidant Body Mist SPF 50 with Vitamin C (sells for $21.00 on Defendant's website);
- Glowscreen Body SPF 40 (sells for $42.00 on Defendant's website);
- Glow Oil SPF 50 (5 oz. sells for $38.00 on Defendant's website);
- Handscreen SPF 40 (6.7 oz. sells for $38.00 on Defendant's website);
- Play Home & Away Set (sells for $77.00 on Defendant's website);
- Unseen Sunscreen SPF 40 Limited Edition Jumbo (sells for $44.00 on Defendant's website);
- Hydrate & Illuminate Set (sells for $74 on Defendant's website);

- PLAY Body Mousse SPF 50 with Blue Sea Kale (6.5 oz sells for $34.00 on Defendant's website);
- PLAY Antioxidant Body Mist SPF 30 with Vitamin C (sells for $21.00 on Defendant's website);
- SPF All-Stars Kit (sells for $55.00 on Defendant's website);
- City Sunscreen Serum SPF 30 (sells for $42.00 on Defendant's website);
- 2-in-1 Beauty Booster Set (sells for $70.00 on Defendant's website);
- SPF On-The-Glow-Kit (sells for $28.00 on Defendant's website);
- PLAY Everyday Lotion SPF 30 with Sunflower Extract (5.5 oz sells for $32.00 on Defendant's website);
- Beach Day Set (sells for $70.00 on Defendant's website);
- The Getaway & Glow Set (sells for $59 on Defendant's website);
- The Everyday Hydration Set (sells for $70.00 on Defendant's website);
- Back-to-SPF Skincare Kit (sells for $95.00 on Defendant's website);
- Touch of Hydration Set (sells for $52.00 on Defendant's website);
- SPF Wardrobe Kit (sells for $90.00 on Defendant's website);
- Shimmer & Glow Set (self for $60.00 on Defendant's website);
- Glowscreen Face & Body Set (sells for $78.00 on Defendant's website);
- Body Butter SPF 40 (sells for $38.00 on Defendant's website);
- SPF from Head-to-Toe Kit (sells for $28.00 on Defendant's website);
- SPF Multitasker Mini Set (sells for $20.00 on Defendant's website); and,
- SPF Bestsellers Mini Set (sells for $20.00 on Defendant's website).

15.     The above Products are all substantially similar because they include the "Reef Safe" advertising and labeling claims.

16.     The above Products are sold at Sephora, Nordstrom and other high-end stores for the same or substantially similar pricing.

17.     Defendant deceptively labels, advertises and packages the Products to target a growing consumer interest in purchasing cleaner products that would not

cause or potentially cause harm to coral reefs or other marine life.

18. Below are true and accurate photographic images from the packaging of Defendant's PLAY Everyday Lotion SPF 50 with Sunflower Extract (counterclockwise from the front panel):



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAY EVERYDAY LOTION SPF 50 provides super broad spectrum sun protection for face & body. Enriched with sunflower, rosemary and rice antioxidants, the formula protects from UV damage, defending the skin from photoaging and dehydration. Ideal for a day of play, this feel-good, water and sweat resistant lotion is moisturizing, lightweight and fast-absorbing. Perfect for all skin tones.

EVERY. SINGLE. DAY.™

*Since 2007, I've been on a mission to change the way the world thinks about sunscreen through Supergoop!'s clean, feel-good, innovative formulas. And because SPF is the most important thing you can do for your skin every. single. day., we've made it a point to create options for all skin types, tones and lifestyles. I hope this formula becomes a new favorite, and that it helps you do whatever it is you love in the sunshine.*

XO Holly

Holly Thaggard,
Supergoop! Creator

CLASS ACTION COMPLAINT

## Drug Facts

| Active Ingredients | Purpose |
|---|---|
| Avobenzone 3% | Sunscreen |
| Homosalate 10% | Sunscreen |
| Octisalate 5% | Sunscreen |
| Octocrylene 7.5% | Sunscreen |

### Uses
• Helps prevent sunburn
• If used as directed with other sun protection measures (see **Directions**), decreases the risk of skin cancer and early skin aging caused by the sun

### Warnings
**For external use only**
**Do not use** on damaged or broken skin
**When using this product** keep out of eyes. Rinse with water to remove.
**Stop use and ask a doctor** if rash occurs
**Keep out of reach of children.** If product is swallowed, get medical help or contact a Poison Control Center right away.

### Directions
• apply generously and evenly 15 minutes before sun exposure
• reapply:
   • after 80 minutes of swimming or sweating
   • immediately after towel drying
   • at least every 2 hours
• **Sun Protection Measures:** Spending time in the sun increases your risk of skin cancer and early skin aging. To decrease this risk, regularly use a sunscreen with a Broad Spectrum SPF value of 15 or higher and other sun protection measures including:
   • Limit time in the sun, especially from 10 a.m. – 2 p.m.
   • Wear long-sleeved shirts, pants, hats, and sunglasses
• Children under 6 months: Ask a doctor

### Inactive Ingredients
Water, Acrylates Copolymer, Diisopropyl Sebacate, Glycerin, Isodecyl Neopentanoate, Isododecane, Lauryl Lactate, Cetyl Alcohol, Potassium Cetyl Phosphate, Brassica Campestris/Aleurites Fordi Oil Copolymer, Oryza Sativa (Rice) Bran Extract, Cetearyl Olivate, Ammonium Acryloyldimethyltaurate/VP Copolymer, Hydroxyacetophenone, Sorbitan Olivate, Diethylhexyl Syringylidenemalonate, Aniba Rosaeodora (Rosewood) Wood Oil, Chlorphenesin, Citrus Aurantium Dulcis (Orange) Peel Oil, Citrus Limon (Lemon) Peel Oil, Ethylhexylglycerin, Eucalyptus Globulus Leaf Oil, Ocimum Basilicum (Basil) Flower/Leaf Extract, Pelargonium Graveolens Flower Oil, Pogostemon Cablin Oil, Pentylene Glycol, 1,2-Hexanediol, Caprylyl Glycol, Xanthan Gum, Helianthus Annuus (Sunflower) Extract, Behenic Acid, Cetyl Behenate, Isostearyl Isostearate, Trisodium Ethylenediamine Disuccinate, Tocopherol, Allantoin, Rosmarinus Officinalis (Rosemary) Leaf Extract, Caprylic/Capric Triglyceride, Panthenol, Pentasodium Triphosphate, Citric Acid

### Other Information
Protect the product in this container from excessive heat and direct sun

### Questions or comments?
Contact our Sun Specialists 877-564-7330

supergoop.com
Distributed by Taylor James, LLC, San Antonio, TX 78215
Every. Single. Day.™ is a trademark of Taylor James, LLC.

- 8-

Clean Chemical
Sunscreen Actives

For All Skin Types

80

Water & Sweat
Resistant (80 minutes)

Non-Comedogenic

Reef-Safe
Non-Irritating
No Synthetic Fragrance
Vegan

cruelty free

CLASS ACTION COMPLAINT

19.     Importantly, the exterior of the packaging displays Defendant's "Reef-Safe" claim.

20.     Below are true and accurate photographic images of Defendant's PLAY Everyday Lotion SPF 50 with Sunflower Extract (font and back panel):



CLASS ACTION COMPLAINT



21.    Importantly, proximately displayed on the Product are the claims "Clean Chemical Sunscreen Actives ·Reef-Safe" at the very top of the back of the Product.

22.    Notably, all of the packaging and labeling for Defendant's Products contain the same "Reef-Safe" claims despite containing active ingredients that are not in fact "Reef-Safe."

23.    Defendant's in store display, such as the one found at Sephora, further perpetrate Defendant's deceptive advertising.  Defendant's tag line "PLAY ALL DAY" is followed by "Without our SPF that's formulated to be **water-and-sweat-resistant** for 80 minutes, **reef-safe**, and super **beach-friendly**." (emphasis in original).  The image below is a picture from an in-store display at Sephora:



CLASS ACTION COMPLAINT

24.     As the entity responsible for development, manufacturing, packaging, advertising, distribution, and sale of the Products and claiming to be "SPF experts," Defendant knew or should have known that each of the Products falsely and deceptively misrepresents that the Products are "Reef safe."

25.     Defendant knows, knew or should have known, that Plaintiff and other economy conscientious consumers did and would rely on the labeling, packaging, and advertising before purchasing the Products, and would reasonably believe that the Products contained no ingredients that would harm coral reefs and other marine life.

26.     Plaintiff and other reasonable consumers did not know, and had no reason to know, that the Products contain ingredients that can harm coral reefs and other marine life. The Products are marketed to consumers with labeling that appears streamline and clean and are placed in higher priced stores like Sephora and Nordstrom where consumers believe they are purchasing a superior, cleaner, and healthier product.  In addition to web advertising, the back of the Products state (either on the Product itself or on the box the Product is sold), in bold or otherwise highlighted, that the Products are "Reef Safe."  There is no disclaimer or other statement indicating that some ingredients in the Products are actually not safe for coral reefs and other marine life. Moreover, even if a reasonable consumer was to read the ingredient list, a reasonable consumer would not know whether octocrylene or avobenzone are in fact reef safe or not.  The consumer reasonably relies on Defendant being a "SPF expert" as advertised to label their Products truthfully after researching the ingredients.

27.     Because the Products are not "Reef Safe" as reasonably expected by Plaintiff and other consumers, Defendant's marketing of the Products was and continues to be misleading and deceptive.

28.     Moreover, by deceptively labeling and misleading consumers that the Products are "Reef Safe," Defendant is in violation of FDA regulations, which

prohibit "claims that would be false and/or misleading on sunscreen products." 21 C.F.R. § 201.327(g).

29.     Each consumer has been exposed to the same or substantially similar deceptive practices because: (1) each of the Products are advertised as "Reef Safe" and (2) each of the Products contain at least two active ingredients, avobenzone and octocrylene, that are harmful to coral and marine life.

30.     Plaintiff and other consumers have paid an unlawful premium for the Products which state it has only "Clean Chemicals" and are "Reef Safe." In fact, Defendant's Products are significantly more expensive than sunscreens sold at CVS, Walmart and Target and thus consumers believe the Products to be cleaner and safer.

31.     Moreover, Plaintiff and other consumers would have paid significantly less for the Products had they known that the Products contained active ingredients that would harm coral reefs and marine life. Therefore, Plaintiff and other consumers purchasing the Products suffered injury in fact and lost money as a result of Defendant's false, unfair, and fraudulent practices, as described herein.

32.     As a result of its misleading business practices, and the harm caused to Plaintiff and other consumers, Defendant should be enjoined from deceptively representing that the Products are "Reef Safe." Furthermore, Defendant should be required to pay for all damages caused to misled consumers, including Plaintiff.

## V.     PLAINTIFF'S INDIVIDUAL ALLEGATIONS

33.     Plaintiff Jabril Battle Jr. purchased Supergoop! PLAY Everyday Lotion SPF 50 with Sunflower Extract from Sephora located at 6000 Sepulveda Blvd. Culver City, CA 90230 (standard size of 5.5 oz) for $32.00 in or around January of 2021 prior to heading to the beach.

34.     Mr. Battle is eco-conscious and wanted a product that had clean chemicals and was reef-safe.

35.     After reviewing the packaging for the Supergoop! PLAY Everyday Lotion SPF 50 with Sunflower Extract, Mr. Battle believed the product to have clean

chemicals and be reef safe as advertised.

36.    Mr. Battle did not know, and had no reason to know, that the product he was purchasing included active ingredients that can harm coral reefs and other marine life.

37.    Mr. Battle relied on Defendant's advertising boasting the product as relief safe and Mr. Battle did not know that the chemicals avobenzone and octocrylene, both of which are active ingredients in the product he purchased, are harmful to coral and marine life

38.    Mr. Battle thus paid an unlawful premium for the product advertised as reef-safe when it in fact is not safe for coral reefs and marine life.

39.    Mr. Battle would not have purchased the product had the product been truthfully advertised and thus, as a result of its misleading business practices, Plaintiff was harmed and suffered injury in fact and lost money as a result of Defendant's false, unfair and fraudulent practices.

40.    Plaintiff intends to, desires to, and will purchase the Products again when he can do so with the assurance that the Products' labels and advertising, which indicate that the Products are "Reef Safe," are lawful and consistent with the Products' ingredients.

## IV.    CLASS ALLEGATIONS

41.    Plaintiff brings this class action lawsuit individually and on behalf of the proposed class under Rule 23 of the Federal Rules of Civil Procedure.

**Nationwide Class**: All persons within the United States, within the applicable limitations period, who purchased any of the Products for personal and household use and not for resale.

**California Subclass**: All persons within California, within the applicable limitations period, who purchased any of the Products for personal and household use and not for resale.

42.     Excluded from the classes are the following individuals: officers and directors of Defendant and its parents, subsidiaries, affiliates, and any entity in which Defendant has a controlling interest; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

43.     Plaintiff reserves the right to modify or amend the definitions of the proposed class before the Court determines whether certification is appropriate.

44.     <u>Numerosity</u>. The members of the Class are so numerous that a joinder of all members is impracticable.  While the exact number of class members is unknown to Plaintiff at this time, Plaintiff believes the class numbers in the tens of thousands, if not more.

45.     <u>Typicality</u>. Plaintiff's claims are typical of the claims of the Class members because, among other things, Plaintiff sustained similar injuries to that of class members as a result of Defendant's uniform wrongful conduct, and their legal claims all arise from the same events and wrongful conduct by Defendant.

46.     <u>Adequacy</u>.  Plaintiff will fairly and adequately protect the interests of the Class members. Plaintiff's interests do not conflict with the interests of the Class members and Plaintiff has retained counsel experienced in complex class action cases to prosecute this case on behalf of the class.

47.     <u>Commonality</u>. Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual members of the class, including the following:

i.      Whether Defendant engaged in the course of conduct alleged herein;

ii.     Whether Defendant's conduct is likely to deceive a reasonable consumer;

iii.    Whether Defendant's conduct constitutes an unfair or deceptive act or practice;

iv.     Whether Defendant violated the consumer protection statutes set forth below;

v.      Whether Plaintiff and the class members are entitled to restitution pursuant to the UCL;

vi.     Whether Defendant's uniform acts and practices violate the CLRA;

vii.    Whether, as a result of Defendant's conduct, Plaintiff and the Class members suffered injury; and

viii.   The nature of the relief, including equitable relief, to which Plaintiff sand class Members are entitled.

48.     Predominance. The common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's conduct.

49.     Superiority. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since a joinder of all members is impracticable.  Furthermore, as damages suffered by Class members may be relatively small, the expense and burden of individual litigation make it impossible for class members to individually redress the wrongs done to them. Individualized litigation also presents a potential for inconsistent or contradictory judgments, and increases the delay and expense presented by the complex legal and factual issues of the case to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

50.     Accordingly, this class action is properly brought and should be maintained as a class action because questions of law or fact common to Class members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

51.     This class action is also properly brought and should be maintained as

a class action because Plaintiff seek injunctive relief and declaratory relief on behalf of the Class members on grounds generally applicable to the proposed class. Certification is appropriate because Defendant has acted or refused to act in a manner that applies generally to the proposed class, making final declaratory or injunctive relief appropriate.

## FIRST CAUSE OF ACTION
### Violation of the California's Unfair Competition Law
### Cal. Bus. & Prof. Code §§ 17200, *et seq.*
### *(On Behalf of Plaintiff and the Classes)*

52.    Plaintiff re-alleges and incorporate by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

53.    Defendant is subject to California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*. The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices…"

### "Unfair" Prong

54.    The UCL prohibits "unfair competition," which is broadly defined as including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." Cal. Bus. & Prof. Code §17200.

55.    Defendant's business practices, described herein, violated the "unfair" prong of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits.

56.    Defendant has made material misrepresentations and omissions, both directly and indirectly, related to their Products advertised as "Reef-Safe." Defendant's conduct was and continues to be of no benefit to purchasers of the

Products, as it is misleading, unfair, unlawful and is injurious to consumers who purchased the Products and were deceived by Defendant's misrepresentations. Deceiving consumers about the Products' impact on the environment is of no benefit to consumers. Therefore, Defendant's conduct was and continues to be "unfair."

57.     As such, Defendant has engaged in unfair or deceptive acts in violation of the UCL.

58.     Defendant is aware of the violations but have failed to adequately and affirmatively take steps to cure the misconduct.

### "Fraudulent" Prong

59.     Under the "fraudulent" prong, a business practice is prohibited if it is likely to mislead or deceive a reasonable consumer or, where the business practice is aimed at a particularly susceptible audience, a reasonable member of that target audience. *See Lavie v. Proctor & Gamble Co.,* 105 Cal.App.4th 496, 506-07 (2003).

60.     Defendant committed "fraudulent" business acts or practices by, among other things, engaging in conduct Defendant knew or should have known would likely to and did deceive reasonable consumers, including Plaintiff and the members of the Classes.  By relying on Defendant's false and misleading representations indicating the Products are "Reef Safe," Plaintiff and the other members of the Class purchased the Products.  Moreover, based on the very materiality of Defendant's fraudulent and misleading conduct, reliance on such conduct as a material reason for the decision to purchase the Products may be presumed or inferred for Plaintiff and members of the Classes.

61.     Defendant knew or should have known that its labeling and marketing of the Products would likely deceive a reasonable consumer.

62.     Plaintiff and Class members acted reasonably when they paid money for Defendant's Product which they believed to be of higher price point because of truthful representations.

**"Unlawful" Prong**

63.   Defendant's business practices, described herein, violated the "unlawful" prong of the UCL by violating the Consumers Legal Remedies Act and False Advertising Law.

64.   Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law.

65.   As detailed herein, Defendant's acts, misrepresentations, omissions, and practices violate the FAL, the CLRA and 21 C.F.R. § 201.327(g).  On account of each of these violations of law, Defendant has also violated the "unlawful" prong of the UCL.

66.   In accordance with California Business & Professions Code §17203, Plaintiff seek an order: (1) enjoining Defendant from continuing to conduct business through its fraudulent conduct; and (2) requiring Defendant to conduct truthful and transparent marketing of their services.

67.   As a result of Defendant's conduct, Plaintiff seeks restitution, disgorgement, and injunctive under California Business & Professions Code §17203.

## SECOND CAUSE OF ACTION

**Violation of the California's Consumers Legal Remedies Act**

**Cal. Bus. & Prof. Code §§ 1750, *et seq.***

***(On Behalf of Plaintiff and the California Subclass for Injunctive Relief only)***

68.   Plaintiff re-alleges and incorporate by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

69.   Each Product is a "good" within the meaning of Cal. Civ. Code § 1761(a), and the purchase of such Products by Plaintiff and members of Consumer Subclass constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

70.   Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have. . . ." By marketing the Products with their current

labels, packaging, and advertisements, Defendant has represented and continues to represent that the Products have characteristics (i.e., are safe for reefs and other marine life) when they are not safe for reefs and other marine life. Therefore, Defendant has violated section 1770(a)(5) of the CLRA.

71.     Cal. Civ. Code § 1770(a)(7) prohibits "[r]espresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." By marketing the Products with their current labels, packaging, and advertisements, Defendant has represented and continues to represent that the Products are of a particular standard (i.e., safe for reefs and other marine life) when they do not meet this standard. Therefore, Defendant has violated section 1770(a)(7) of the CLRA.

72.     Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By labeling, packaging, and marketing the Products as "Reef Safe" so that a reasonable consumer would believe that the Products are "Reef Safe," and then intentionally not selling Products that are "Reef Safe," Defendant has violated section 1770(a)(9) of the CLRA.

73.     Defendant also violated the CLRA by intentionally failing to disclose that the Products contain at least two active ingredients that cause or can cause damage to coral reefs and marine life.

74.     At all relevant times, Defendant has known or reasonably should have known that the Products are not "Reef Safe," and that Plaintiff and other members of the California Subclass would reasonably and justifiably rely on that representation in purchasing the Products.

75.     Plaintiff and members of the California Subclass have reasonably and justifiably relied on Defendant's misleading, and fraudulent conduct when purchasing the Products. Moreover, based on the very materiality of Defendant's fraudulent and misleading conduct, reliance on such conduct as a material reason for the decision to purchase the Products may be presumed or inferred for Plaintiff and

members of the California Subclass.

76.    Plaintiff and members of the California Subclass have suffered and continue to suffer injuries caused by Defendant because they would not have purchased the Products or would have paid significantly less for the Products had they known that Defendant's conduct was misleading and fraudulent.

77.    Under Cal. Civ. Code § 1780(a), Plaintiff and members of the California Subclass are seeking injunctive relief pursuant to the CLRA, preventing Defendant from further wrongful acts and unfair and unlawful business practices.

78.    Pursuant to Cal. Civ. Code § 1782, on October 4, 2021, counsel for Plaintiff mailed a notice and demand letter by certified mail, with return receipt requested, to Defendant. The CLRA letter provided notice of Defendant's violation of the CLRA that demanded that Defendant correct, repair, replace, or otherwise rectify the unlawful, unfair, false, and deceptive practices complained of herein. Should Defendant fail to rectify or remedy its challenged conduct within 30 days after receipt of the notice and demand letter, Plaintiff will file an amended complaint for damages under the CLRA.

79.    In accordance with Cal. Civ. Code § 1780(d), Plaintiff's CLRA venue declaration is attached hereto as **Exhibit A**.

**THIRD CAUSE OF ACTION**

**False Advertising**

**Cal. Bus. & Prof. Code §§ 17500 *et seq.* and 17535**

***(On Behalf of Plaintiff and the Classes)***

80.    Plaintiff re-allege and incorporates by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

81.    Plaintiff brings this claim individually and on behalf of the members of the Class.

82.    The False Advertising Law prohibits advertising "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should

- 22-

CLASS ACTION COMPLAINT

be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

83.    As detailed above, Defendant's marketing and sale of the Products as being "Reef Safe" is likely to deceive a reasonable consumer because the Products contain ingredients that are harmful to coral reefs and other marine life.

84.    In reliance of Defendant's false and misleading representations indicating the Products are "Reef Safe," Plaintiff and the other members of the Classes purchased the Products. Moreover, based on the very materiality of Defendant's fraudulent and misleading conduct, reliance on such conduct as a material reason for the decision to purchase the Products may be presumed or inferred for Plaintiff and the members of the Classes.

85.    Defendant knew or should have known that its labeling and marketing of the Products is likely to deceive a reasonable consumer.

86.    Plaintiff and members of the Classes request that this Court cause Defendant to restore this fraudulently obtained money to Plaintiff and members of the Classes, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the False Advertising Law or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff and members of the Classes may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

**FOURTH CAUSE OF ACTION**

**Breach of Express Warranty**

**California Commercial Code § 2312**

***(On Behalf of Plaintiff and the Classes)***

87.    Plaintiff re-allege and incorporates by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

88.    California Commercial Code § 2313 provides that "(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods

- 23-

CLASS ACTION COMPLAINT

shall conform to the affirmation or promise," and "(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Cal. Com. Code § 2313.

89.    Defendant has expressly warranted on the packaging of the Products and in advertising on their Website that they are "Reef Safe." This representation about the Products: (1) is an affirmation of fact and promises made by Defendant to consumers that the Products are in fact "Reef Safe"; (2) became part of the basis of the bargain to purchase the Products when Plaintiff relied on the representation; and (3) created an express warranty that the Products would conform to the affirmation of fact or promise. In the alternative, the representation about the Products is a description of goods which was made as part of the basis of the bargain to purchase the Products, and which created an express warranty that the Products would conform to the Products' representation.

90.    Plaintiff and members of the Class reasonably and justifiably relied on the foregoing express warranty, believing that the Products did in fact conform to the warranty.

91.    Defendant has breached the express warranty made to Plaintiff and members of the Classes by selling the Products, which contain ingredients that are not reef friendly or safe.

92.    Plaintiff and members of the Classes paid a premium price for the Products but did not obtain the full value of the Products as represented. If Plaintiff and members of the Classes had known of the true nature of the Products, they would not have purchased the Products or would not have been willing to pay the premium price associated with the Products.

93.    As a result, Plaintiff and the Classes suffered injury and deserve to recover all damages afforded under the law.

## FIFTH CAUSE OF ACTION
### Breach of Implied Warranty
### California Commercial Code § 2314
### *(On Behalf of Plaintiff and the Classes)*

94.     Plaintiff re-alleges and incorporates by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

95.     California's implied warranty of merchantability statute provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Com. Code § 2314(1).

96.     California's implied warranty of merchantability statute also provides that "[g]oods to be merchantable must be at least such as . . . (f) [c]onform to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314(2)(f).

97.     Defendant is a merchant with respect to the sale of sunscreen products, including the Products. Therefore, a warranty of merchantability is implied in every contract for sale of the Products to California consumers.

98.     By advertising the Products with their current labeling, Defendant made a promise on the label of the Products that the Products are "Reef Safe." But the Products have not "conformed to the promises…made on the container or label" because they are not "Reef Safe" as outlined above. Plaintiff, as well as other California consumers, did not receive the goods as impliedly warranted by Defendant to be merchantable.

99.     Therefore, the Products are not merchantable under California law and Defendant has breached its implied warranty of merchantability in regard to the Products.

100.   If Plaintiff and members of the Classes had known that the Products were not "Reef Safe," they would not have been willing to pay the premium price

associated with them or would not have purchased them at all. Therefore, as a direct and/or indirect result of Defendant's breach, Plaintiff and members of the Classes have suffered injury and deserve to recover all damages afforded under the law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all Class members proposed in this Complaint, respectfully request that the Court enter a judgment in their favor and against Defendant, as follows:

A. Determining that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure and appointing them and their Counsel to represent the class;

B. Requiring Defendant bear the cost of Class notice;

C. Finding Defendant'' conduct was unlawful as alleged herein;

D. Enjoining Defendant from engaging in the wrongful conduct complained of herein, and as to violations of the CLRA.  As to Plaintiff's CLRA claim, if Defendant fails to take the corrective action detailed in Plaintiff's CLRA letter within thirty days of the date of the letter, then Plaintiff will seek leave to amend his complaint to add a claim for damages under the CLRA;

E. Requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendant's wrongful conduct;

F. Awarding Plaintiff and Class members actual damages, compensatory damages, punitive damages, statutory damages, and statutory penalties, in an amount to be determined;

G. Awarding Plaintiff and Class members costs of suit and attorneys' fees, as allowable by law; and,

H. Granting such other and further relief as this court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demand a trial by jury of all issues so triable.

DATED: October 4, 2021          Respectfully submitted,

*/s/ Ronald A. Marron*
Ronald A. Marron
**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON
*ron@consumersadvocates.com*
ALEXIS M. WOOD
*alexis@consumersadvocates.com*
KAS L. GALLUCCI
*kas@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

***Attorney for Plaintiff and the Proposed Class***

CLASS ACTION COMPLAINT